UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| METROPOLITAN LIFE INS. CO., <br><br> Plaintiff, <br><br> v. <br><br> BRENDALEE MOORE; ASHLEY MOORE; CHARITY RIDGLEY; WASHINGTON STATE PATROL MEMORIAL FUND, <br><br> Defendants. | Case No. 3:24-cv-05890-TMC <br><br> ORDER GRANTING DEFAULT JUDGMENT |

## I.    INTRODUCTION

Plaintiff MetLife initiated an interpleader action seeking declaratory relief regarding a life insurance policy it issued to Decedent Robert Moore. Dkt. 1. Because of a dispute as to who the proper beneficiaries of the policy are, MetLife filed the action against all four potential beneficiaries: Defendants Brendalee Moore, Ashley Moore, Charity Ridgley, and Washington State Patrol (WSP) Memorial Funds. *Id.* Defendants Ashley Moore, Charity Ridgley, and WSP Memorial Funds have not appeared in this action or responded to MetLife's motion. Dkt. 22; Dkt. 23; Dkt. 24. The Clerk entered an order of default and the appearing parties—MetLife and Brendalee Moore—have moved for default judgment against Defendants Charity Ridgley and

ORDER GRANTING DEFAULT JUDGMENT - 1

WSP Memorial Fund.[1] Dkt. 24; Dkt. 28. Because MetLife and Brendalee Moore have met the standard for default judgment, the Court GRANTS the motion.

## II. BACKGROUND

Plaintiff Metropolitan Life Insurance Company (MetLife) offers life insurance benefits through employee welfare benefit plans. Dkt. 1 ¶ 1. Decedent Robert A. Moore was covered under one such policy through his work with the Washington State Patrol. *Id.* ¶¶ 1, 9. When Mr. Moore died, he had $35,000.00 in basic life insurance coverage and $500,000.00 in optional life insurance coverage under the MetLife Plan. *Id.* ¶ 10. Under the Plan terms, Mr. Moore's benefits became payable to his designated beneficiaries after he passed. *Id.* ¶¶ 13–15. When he died, Mr. Moore's most recent beneficiaries on file with MetLife were Defendant Ashley Moore and Defendant Charity Ridgley ("2021 Designation"). *Id.* ¶ 16. But, a few weeks after Mr. Moore's death, MetLife was informed of a more recent beneficiary designation providing that Defendant Brendalee Moore and Defendant WSP Memorial Fund were the beneficiaries ("2023 Designation"). *Id.* ¶ 17.

Based on the later 2023 Designation, MetLife informed Defendants Ashley Moore and Charity Ridgley that their claims were denied. *Id.* ¶ 18. Shortly thereafter, MetLife received a letter from Elizabeth Elaine Woods (a nonparty), who claimed to be Defendant Ashley Moore's mother and Mr. Moore's ex-wife. *Id.* ¶ 19. She contested the 2023 Designation. *Id.* Accordingly, MetLife informed all claimants that the insurer intended to file an interpleader action to permit a court to adjudicate the claims. *Id.* ¶ 20.

MetLife filed the present action on October 21, 2024. *See generally id.* MetLife explained that the company was "unable to determine which of the Claimants is entitled to the Plan

---

[1] Defendant Ashley Moore has released her claims. Dkt. 28 at 2.

ORDER GRANTING DEFAULT JUDGMENT - 2

Benefits and is unable to pay out the Plan Benefits without the risk of double liability." *Id.* ¶ 25. MetLife admitted "its liability to pay the Plan Benefits under the Plan and" committed to "deposit the Plan Benefits plus applicable interest with the Court in connection with these proceedings for disbursement in accordance with the judgment of this Court." *Id.*

### III.    LEGAL STANDARD

#### A. Jurisdiction

The Court first examines its jurisdiction when evaluating a motion for default judgment. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The Court has diversity jurisdiction here because the parties are citizens of different states, and the amount in controversy—the value of the policy—exceeds $75,000. *See* 28 U.S.C. § 1332(a)(1); Dkt. 1 ¶ 2–6, 10. The Court also has personal jurisdiction over Defendants. *See* Dkt. 1 ¶¶ 3–6.

#### B.    Legal Standards for Interpleader and Default Judgment

"A named interpleader defendant who fails to answer the interpleader complaint and assert a claim to the res forfeits any claim of entitlement that might have been asserted" if the nonanswering defendant was properly served. *Standard Ins. Co. v. Asuncion*, 43 F. Supp. 3d 1154, 1156 (W.D. Wash. 2014) (citation omitted). "The Court may accordingly, in its discretion, grant default judgment against the non-appearing interpleader defendants where the only remaining claimants demonstrate their entitlement to the funds and do not dispute the respective distributions." *Id.* (first citing *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992); and then citing *Nationwide Mutual Fire Ins. Co. v. Eason*, 736 F.2d 130, 133 n.6 (4th Cir. 1984)).

Motions for default judgment are governed by Rule 55 of the Federal Rules of Civil Procedure. The Rule authorizes the Court to enter default judgment against a party that fails to appear or otherwise defend in an action. Fed. R. Civ. P. 55. In deciding motions for default

judgment, courts take "the well-pleaded factual allegations in the complaint as true, except those relating to the amount of damages." *Rozario v. Richards*, 687 F. App'x 568, 569 (9th Cir. 2017) (internal citations and quotation marks omitted); Fed. R. Civ. P. 8(b)(6). Courts do not accept the truth of statements in the complaint that amount to legal conclusions. *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). Courts weigh the following factors ("*Eitel* factors") in deciding motions for default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986); *see NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616–17 (9th Cir. 2016) (discussing how district courts "weigh" the *Eitel* factors). Entry of default judgment is left to a court's sound discretion. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). If a court determines that default judgment is appropriate, it then determines the relief that should be given. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

## IV.  DISCUSSION

### A. Analysis of the *Eitel* Factors

The Court agrees with MetLife and Moore that the *Eitel* factors favor entry of default judgment against Ridgley and WSP Memorial Fund. *See generally* Dkt. 28.

#### 1. Prejudice to Stipulating Parties

MetLife filed this suit in October 2024, and Defendants have neither responded nor defended in this action. Dkt. 1; Dkt. 22; Dkt. 24. Without entry of default judgment, MetLife

ORDER GRANTING DEFAULT JUDGMENT - 4

would be prejudiced because it would be left with no legal remedy. *See Principal Life Ins. Co. v. Hill*, No. C21-1716 MJP, 2022 WL 2718087, at *2 (W.D. Wash. July 13, 2022) ("Plaintiff will be prejudiced by not having a decision on the merits of its claim for recission of the Policy."); *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014). MetLife would "be denied the benefits of the interpleader process, i.e., 'protect[ing] stakeholders from multiple liability as well as from the expense of multiple litigation.'" Dkt. 28 at 3 (quoting *Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1034 (9th Cir. 2000)); *see also Asuncion*, 43 F. Supp. 3d at 1156 ("Without the entry of default judgment as to the sibling defendants' entitlement to the proceeds, their claims could not otherwise be resolved, judgment would not be entered to fully release Standard from liability, and the insurance proceeds would merely sit in the Court's registry.") (citation omitted).

And Defendant Moore would be prejudiced by the ongoing delay in determining benefits. Dkt. 28 at 3 (quoting *W. Conference of Teamsters Pension Plan v. Jennings*, No. C-10-03629 EDL, 2011 WL 2609858, at *3 (N.D. Cal. June 6, 2011) ("Without entry of default judgment, the competing stakeholders' claims cannot be finally resolved.")); *see also Asuncion*, 43 F. Supp. 3d at 1156. Thus, the first *Eitel* factor favors default judgment.

    2.    *Merits of Claim and Sufficiency of the Complaint*

The second and third *Eitel* factors, concerning the merits of the plaintiff's claim and the sufficiency of their complaint, are "often analyzed together." *See, e.g.*, *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) (citing *PepsiCo Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal 2002)). These two factors support default judgment when the plaintiff's complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations marks and citation omitted); *see Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir.

ORDER GRANTING DEFAULT JUDGMENT - 5

1978). Courts cannot enter default judgment if the complaint fails to state a claim. *See Moore v. United Kingdom*, 384 F.3d 1079, 1090 (9th Cir. 2004).

In this case, the Complaint adequately alleges that conflicting claims from the Defendants prevent MetLife from determining the rightful beneficiaries, and that MetLife "fear[s] exposure to double or multiple liability for the Plan Benefits." Dkt. 28 at 4; Dkt. 1 ¶¶ 9–23. Defendant Moore is identified as one of the beneficiaries in the 2023 Designation. *Id.* ¶ 17; Dkt. 1-5 at 2. Thus, she has adequately asserted her entitlement to the funds under the proffered 2023 Designation. *See generally* Dkt. 1-4; *see also Asuncion*, 43 F. Supp. 3d at 1156–57 (similar).

    3.    *Sum of Money at Stake*

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176–77. The Court assesses whether the amount of money sought is proportional to the harm caused by Defendants' conduct. "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014).

The amount at issue here is $535,000. Dkt. 1 ¶ 10. But in an interpleader action, this factor is deemed neutral because the interpleader plaintiff does not seek damages. *See Asuncion*, 43 F. Supp. 3d at 1156; *see also W. Conf. of Teamsters Pension Plan v. Jennings*, No. C-10-03629 EDL, 2011 WL 2609858, at *3 (N.D. Cal. June 6, 2011), *report and recommendation adopted*, No. C 10-03629 PJH, 2011 WL 2609860 (N.D. Cal. July 1, 2011).

    4.    *Possibility of Dispute About Material Facts*

As for the fifth *Eitel* factor, the Court finds it unlikely that any disputes of material fact remain. Once default is entered, well-pleaded factual allegations in the complaint are taken as true except for allegations relating to damages. *TeleVideo Sys., Inc.*, 826 F.2d at 917–18. Default

was entered on May 29, 2025. Dkt. 24. MetLife's exhibits support the allegations in the complaint. *See* Dkts. 1-1; 1-2; 1-3; 1-4; 1-5; 1-6. This factor favors default judgment.

        5.      *Whether Default Was Due to Excusable Neglect*

Under the sixth *Eitel* factor, the Court examines whether Defendants' default resulted from excusable neglect. *See PepsiCo*, 238 F. Supp. 2d at 1177. MetLife has provided evidence that it notified the non-appearing Defendants even before initiating the suit. *See* Dkt. 1-6. MetLife has also provided evidence that Defendants were served, *see* Dkts. 1-7; 1-8; 1-9; 1-10. There is no evidence in the record to support a finding that Defendants' failure to respond stems from excusable neglect. Accordingly, the Court concludes that the sixth *Eitel* factor supports default judgment.

        6.      *Policy Favoring Decisions on the Merits*

Finally, the seventh *Eitel* factor favors that courts decide cases "upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. But when a defendant fails to appear or defend themselves in an action, the policy favoring decisions on the merits is not dispositive. *See PepsiCo*, 238 F. Supp. 2d at 1177. Indeed, Federal Rule of Civil Procedure 55 allows courts to issue a default judgment if a defendant fails to appear or defend. *Id*. The Court finds that the seventh *Eitel* factor does not weigh against default judgment here.

**B.    Movants' Requested Remedies**

Since all *Eitel* factors favor entry of default judgment, the Court now turns to remedies. *See TeleVideo Sys., Inc.*, 826 F.2d at 917–18. The Court does not consider defaulting defendants to have admitted the facts alleged concerning damages. *See id*. at 917. Instead, plaintiffs moving for default judgment should submit "a declaration and other evidence establishing [their] entitlement to a sum certain and to any nonmonetary relief sought." LCR 55(b)(2).

In a separate motion for disbursal of the life insurance proceeds and dismissal of the case, *see* Dkt. 25, MetLife and Moore have requested that the Court disburse the Plan Benefits in accordance with the 2023 Designation:

- $481,500.00 to Brendalee Moore; and
- $38,500.00 to the Washington State Patrol Memorial Fund.

*Id.* ¶ 6. Further, MetLife and Moore agree that MetLife's attorneys' fees and costs shall be paid/withheld from the benefits of Washington State Patrol Memorial Fund in the amount of $15,000.00. *Id.* ¶ 7. MetLife and Moore further stipulate that:

> Following the disbursement of the Plan Benefits, as described above, the Stipulating Parties agree that this Court shall enter an order discharging MetLife, its predecessors, successors, affiliates, parent corporations, employees, officers, and agents are fully and forever released, discharged, and acquitted of any liability of any kind or nature whatsoever with respect to the terms of the Policy, the benefits payable thereunder, and/or the death of Decedent as to all claims, charges, or demands that exist now or may arise at any time in the future.

*Id.* ¶ 8.

## V.  CONCLUSION

For these reasons, MetLife and Moore's motion for default judgment, Dkt. 28, is GRANTED. Similarly, the motion for disbursal and dismissal, Dkt. 25, is GRANTED. The Clerk is accordingly AUTHORIZED and DIRECTED to draw two check(s) on the funds deposited in the registry of this Court in the amount of $481,500.00 to Brendalee Moore; $38,500.00 to the WSP Memorial Fund, plus all accrued interest (divided equally), minus any statutory users' fees. Additionally, the Clerk is AUTHORIZED and DIRECTED to draw a third check on the funds deposited in the registry of this Court in the amount of $15,000 to MetLife. The Clerk is DIRECTED to mail or deliver the checks to those individuals. Pursuant to Local Civil Rule 67(b), Brendalee Moore, WSP Memorial Fund, and MetLife shall provide their mailing addresses, Social Security numbers, or Tax ID numbers directly to the Clerk of Court.

Consistent with the remaining parties' stipulation and requested relief, the Court further ORDERS that MetLife, its predecessors, successors, affiliates, parent corporations, employees, officers, and agents are fully and forever released, discharged, and acquitted of any liability of any kind or nature whatsoever with respect to the terms of the Policy, the benefits payable thereunder, and/or the death of Decedent as to all claims, charges, or demands that exist now or may arise at any time in the future.

The Clerk is further directed to CLOSE this case.

Dated this 17th day of July, 2025.

_____
Tiffany M. Cartwright
United States District Judge